UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GAGANDEEP SINGH,

                    Petitioner,

          v.

PAMELA BONDI, et al.,

                    Respondent.

Case No. 2:26-cv-00962-TLF

ORDER GRANTING HABEAS
PETITION IN PART

Petitioner Gagandeep Singh, through counsel, filed a federal habeas corpus petition under 28 U.S.C. § 2241. Dkt. 1. Petitioner is detained at the Northwest ICE Processing Center (NWIPC). *Id.*

Petitioner alleges, among other things, that his continued detention has become indefinite under *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) and violates Due Process. *Id.* He seeks: (1) a writ of habeas corpus directing the respondents to release him forthwith from unlawful detention, and (2) an injunction preventing the respondents from irreparably harming him by removing him without due process of law, or removing him to a country where he will face imprisonment, servitude, or other forms of punishment. *Id.*

**BACKGROUND**

Petitioner is a native and citizen of India. Dkt. 9 (Declaration of Anthony Rosa "Rosa Decl.") ¶ 3; Dkt. 10 (Declaration of Lawrence Van Daley ("Van Daley Decl.") Ex. 1

ORDER GRANTING HABEAS PETITION IN PART - 1

(Notice to Appear). On or about June 6, 2013, petitioner entered the United States at or near San Luis, Arizona, without inspection or admission by an immigration officer. *Id.* He was apprehended by U.S. Customs and Border Protection (CBP) Border Patrol agents and determined to be inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien who, at the time of application for admission, lacked a valid entry document and had entered without inspection. *Id*; Dkt. 10 (Van Daley Decl.) Ex. 2 (Form I-213).

On July 1, 2013, the Department of Homeland Security (DHS) issued petitioner a Notice to Appear ("NTA"), initiating removal proceedings before the Immigration Court. Dkt. 9 (Rosa Decl.) ¶ 4. On July 12, 2013, petitioner was released from DHS custody on a $7,500 bond. *Id.* ¶ 4; Dkt. 10 (Van Daley Decl.), Ex. 3 (Bond Order).

On February 18, 2020, petitioner, represented by counsel, appeared before an Immigration Judge in Sacramento, California, for a hearing on the merits on his applications for relief from removal. Dkt. 9 (Rosa Decl.) ¶ 5. The Immigration Judge denied petitioner's application for relief, ordered petitioner removed to India, and granted withholding of removal under 8 U.S.C. § 1231(b)(3). *Id.*; Dkt. 10 (Van Daley Decl.) Ex. 4 (Removal Order). Petitioner waived appeal of the Immigration Judge's decision to the Board of Immigration Appeals, rendering the removal order administratively final. *Id.*

On January 30, 2023, petitioner was arrested by the San Joaquin County Sheriff's Office in California on four felony firearms charges. Dkt. 9 ("Rosa Decl.") ¶ 6. Those charges remain pending, and an arrest warrant is currently outstanding. *Id.*

ORDER GRANTING HABEAS PETITION IN PART - 2

Petitioner asserts that he missed a court date in his pending criminal case because ICE arrested and detained him, and this is what prompted the bench warrant for his arrest. Dkt. 1 at 6.

On January 21, 2025, ICE mailed a notice to petitioner's bond obligor directing petitioner to report to the Stockton, California ICE Field Office on February 20, 2025, for removal. Dkt. 9 (Rosa Decl.) ¶ 7. Petitioner failed to appear. *Id.*

Petitioner states in a declaration that he did not receive and was not aware of the January 21, 2025, notice and direction that he appear in Stockton for removal. Dkt. 12 at 2. He states his obligor did not tell him that he had received this notice. *Id.*

The Government presents evidence in the form of a declaration from Deportation Officer Anthony Rosa, that on February 20, 2025, petitioner was "returned to the United States in Blaine, Washington by Canadian Border Services Agency ("CBSA") officers and detained by [U.S. Customs and Border Patrol] CBP." And "an Exclusion Order issued by CBSA indicates Petitioner was seeking entry to reside in Canada on a permanent basis, based on an asylum claim against India." Dkt. 9 (Rosa Decl.) ¶ 8; Dkt. 10 (Van Daley Decl.) Ex. 5 (Exclusion Order).

Petitioner states in a declaration that he intended only to meet his cousin who lives in Canada and did not intend to cross the border or apply for asylum or other legal status in Canada. Dkt. 12 at 1-2. He states that when Canadian authorities detained him they told him they would deport him to India but that he could apply for asylum. *Id.* He states because he feared persecution in India, he applied for asylum. *Id.*

ORDER GRANTING HABEAS PETITION IN PART - 3

On February 21, 2025, petitioner was transferred to the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington, where he remains in DHS custody. Dkt. 9 (Rosa Decl.) ¶ 9.

On March 13, 2025, ICE cancelled petitioner's $7,500 bond. Dkt. 9 (Rosa Decl.) ¶ 10.

Deportation Officer Rosa states that on May 28, 2025, petitioner "wrote a letter to the Tacoma, Washington Immigration Court stating he didn't fear returning to India and wanted to cancel his grant of withholding of removal." Dkt. 9 (Rosa Decl.) ¶ 11; Dkt. 10 (Van Daley Decl.), Ex. 6, (Note to Court).

Petitioner states in his declaration that "[o]n May 28, 2025, Officer DeCastro directed me to sign a blank piece of paper in two places. He took the paper from me and wrote on it. He did not show me the paper when he finished writing on it, but he told me he would use it to cancel my withholding of removal. I believe this piece of paper is the document that reproduced as Exhibit 6 to the Declaration of Lawrence Van Daley. *See* Dkt. 10-6. I did not write this letter." Dkt. 12 at 2-3.

On November 17, 2025, petitioner filed a motion to reopen removal proceedings with the Immigration Court in Sacramento, California. Dkt. 9 (Rosa Decl.) ¶ 12. The motion was rejected on November 20, 2025, for failure to include proof of payment of the required filing fee. *Id.*; Dkt. 10 (Van Daley Decl.) Ex. 7 (Court Order).

Petitioner states in his declaration that:

> In October 2025, ICE officials informed me that if I did not voluntarily reopen my case and ask to have my withholding of removal cancelled, ICE would hold me at NWIPC for the rest of my life. They told me I would never be released. Faced with the government's threat and forced to choose between persecution in India or life-long detention in the United States, I reluctantly chose to try to re-open my case and cancel my withholding of removal to India. *See* Dkt. 8 at 5; Dkt. 10-7. I continue to fear violence and persecution in India and do not want to return there,

ORDER GRANTING HABEAS PETITION IN PART - 4

but I was desperate to leave detention and thought allowing myself to be returned to India was my only way out of ICE custody.

Dkt. 12 at 2-3.

Petitioner remains in DHS custody at the NWIPC. Dkt. 9 (Rosa Decl.) ¶ 13. The Government[1] acknowledges in their brief that "no removal plans are in place at this time. The ninety-day removal period under 8 U.S.C. § 1231(a)(1) ended on or about May 21, 2025, and the six-month presumptively reasonable period of detention under *Zadvydas*, expired on or about August 22, 2025." Dkt. 8 at 5-6.

## DISCUSSION

### A.    Indefinite Detention

Petitioner argues he is indefinitely detained within the meaning of *Zadvydas v. Davis*, and he is entitled to release. 533 U.S. 678 (2001).

The parties agree petitioner is detained under 8 U.S.C. § 1231, which governs the detention and release of noncitizens who have been ordered removed (as opposed to noncitizens apprehended at the border under § 1225, or those not yet ordered removed, § 1226). Section 1231(a) provides that the Department of Homeland Security ("DHS") is required to detain a noncitizen during a 90-day "removal period." 8 U.S.C. § 1231(a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, or to release them on supervision. 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas*, 533 U.S. at 682.

---

[1] Hereinafter the Court refers to the respondents collectively as "the Government."

ORDER GRANTING HABEAS PETITION IN PART - 5

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. 533 U.S. at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief.

If petitioner's detention has become indefinite under *Zadvydas*, release is warranted even if the petitioner has a criminal record. *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 2025 WL 3484769, at *5 (W.D. Wash. Dec. 4, 2025) (quoting *Zadvydas*, 533 U.S. at 684) (explaining that while the "Court does not take lightly respondents' warning that petitioner is still 'a danger to the community' . . . the Court is bound by the holding in *Zadvydas*, a case that notably involved [an] individual with 'a long criminal record' and 'a history of flight.'"); *see also Hamedani v. Bondi*, No. 2:25-cv-02509-JNW, 2026 WL 452424, at *3-4 (W.D. Wash. Feb. 18, 2026) (noting that despite the petitioner's "criminal history . . . [h]e must be released" under *Zadvydas*).

Under the relevant regulations, once it is determined that there is no significant likelihood of removal in the reasonably foreseeable future, noncitizens may be released on an Order of Supervision. 8 C.F.R. § 241.13(h). Under 8 C.F.R. § 241.13(i)(2) "[t]he Service may revoke an alien's release under this section and return the alien to custody

ORDER GRANTING HABEAS PETITION IN PART - 6

if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." The regulation also states, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release," and that there will be an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release. 8 C.F.R. §§ 241.13(i)(3).

Here, the parties agree petitioner has been held in detention, for purposes of the *Zadvydas* analysis, for over six months. The record reflects that a final order of removal issued on February 18, 2020, petitioner was re-detained on February 20, 2025, and he has not been released since that time. Thus, the presumptively reasonable period for detention under *Zadvydas* has expired. 533 U.S. 678.

Through his petition, reply, and uncontroverted assertions, petitioner has shown the Government has made no progress toward removing him. Petitioner asserts, and the Government does not dispute, that petitioner cannot be removed to India at this time as he has been granted withholding of removal. *See Rea-Hernandez v. Bondi*, No. 2:25-CV-02609-TL, 2026 WL 322874, at *4 (W.D. Wash. Feb. 6, 2026) ("Courts routinely find that noncitizens [who show they have obtained withholding of removal to the country

ORDER GRANTING HABEAS PETITION IN PART - 7

designated in their removal order and have no ties to other countries] have met their initial burden under *Zadvydas*.").

And, the Government concedes in their response that "no removal plans are in place at this time." Dkt. 8 at 5; *See, e.g., Mosquera Camacho v. Hermosillo*, No. 25-cv-02457, 2026 WL 628297, at *3 (W.D. Wash. Mar. 6, 2026) (finding good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future because "[r]espondents have not identified a third country to which they can remove Petitioner, let alone secured travel documents and made other necessary arrangements to effectuate a removal.").

The Court finds petitioner has met his initial burden of showing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and that the Government has failed to rebut that showing.

Accordingly, petitioner's continued detention has become "indefinite" within the meaning of *Zadvydas*. 533 U.S. at 682. The Court orders the Government to release petitioner under reasonable and appropriate conditions of release pursuant to 8 C.F.R. § 241.13(h). *Id.* at 699-700.[2][3]

**B.     Third Country Removal**

Petitioner also seeks an order preventing his removal to a third country without

[2] As the Court releases petitioner based on his indefinite detention under *Zadvydas*, it need not also address his claims under *Mathews v. Eldridge*, 424 U.S. 319 (1975). *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1318 n.1 (W.D. Wash. 2025).

[3] Petitioner also requests additional injunctive relief, specifically an order preventing the government from re-detaining him without first holding a hearing before a neutral decision-maker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since petitioner was previously released. Dkt. 1. The Court declines to grant this relief and adopts the reasoning of *Saadhom v. Bondi*, 26-cv-00425-TL, 2026 WL 698786, at *10 (W.D. Wash. March 12, 2026).

ORDER GRANTING HABEAS PETITION IN PART - 8

notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings and an order barring removal to any third country pursuant to the Government's "punitive" removal policy. Dkt. 1 at 15-23

### 1. Due Process – Notice and Opportunity to be Heard

Petitioner also asks the Court to order that the Government may not remove or seek to remove him to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings. Petitioner argues that the government's current third-country removal policy violates Due Process. Dkt. 1 at 17-20.

This Court recently addressed this issue in *R.J. E.R. v. Hermosillo*, 26-cv-00296-TLF Dkt. 15, (W.D. Wash. March 6, 2026) and *Zheng v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:25-CV-02483-TLF, 2026 WL 850531 (W.D. Wash. Mar. 27, 2026).

The Court adopts the analysis of these opinions here and finds, for the reasons stated in those opinions, injunctive relief is appropriate regarding third country removal. If the Government take steps to remove petitioner to any other country, it must provide him with written notice of its intent to do so and a meaningful opportunity to respond in compliance with the statute and due process, in reopened removal proceedings before an immigration judge. *See id.* The relief granted will also give petitioner the ability to contest removal to a third country where he is likely to face imprisonment or other harm.

### 2. Punitive Nature of Removal Policy

Petitioner further argues that the Court should categorically prohibit his removal to any third country on the ground that the Government's third-country removal policy is unconstitutionally punitive in all applications. Dkt. 1 at 22.

ORDER GRANTING HABEAS PETITION IN PART - 9

Petitioner cites to *Wong Wing v. United States*, 163 U.S. 228 (1896) in support of this claim. Dkt. 1 at 22-23. In *Wong Wing*, the United States Supreme Court "held unconstitutional a statute that imposed a year of hard labor upon aliens subject to a final deportation order." *Zadvydas*, 533 U.S. at 694 (citing *Wong Wing*, 163 U.S. 228). As explained by the Court in *Nguyen v. Scott*:

> The Court [in *Wong Wing*] held that while "it is within the constitutional power of congress" to deport those unlawfully present in the United States, Congress could not add to the sanction of expulsion the "punishment by imprisonment at hard labor ... without a trial by jury." [*Wong Wing*, 163 U.S.] at 235, 16 S. Ct. 977. The Court explained that there is a fundamental difference between "detention or temporary confinement" while awaiting deportation and "imprisonment at hard labor." *Id.* at 236, 16 S. Ct. 977. The latter, the Court concluded, was an "infamous punishment" that could only be imposed following a criminal trial with the full protection of the Fifth and Sixth Amendments. *Id.* at 237-38, 16 S. Ct. 977.

796 F. Supp. 3d 703, 733 (W.D. Wash. Aug. 21, 2025). The Court in *Wong Wing* found "that all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth and Sixth] amendments, and that even [noncitizens] shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law." 163 U.S. at 238.

On the present record, the Court declines to make a broad ruling prohibiting petitioner's removal to any third country on the ground that the Government's third-country removal program is unconstitutionally punitive in all applications. There is no argument or evidence presented in this case that the Government has a plan or has made any attempt to remove petitioner to any third country. The relief granted in this order requiring notice and a meaningful opportunity to be heard will allow petitioner to challenge any proposed third-country removal where he can show a risk of

ORDER GRANTING HABEAS PETITION IN PART - 10

imprisonment or other serious harm, and nothing in this order prevents him from pursuing additional relief. *See Coke v. Bondi*, 26-71-MLP, 2026 WL 221514, at *3 (W.D. Wash. Jan. 28, 2026); *Rea-Hernandez v. Bondi*, 25-cv-02609-TL, 2026 WL 322874, at *5 (W.D. Wash. Feb. 6, 2026).

//

//

## CONCLUSION

The Court **GRANTS** the federal habeas petition (Dkt. 1) **IN PART**.

1. The Government is **ORDERED** to release petitioner from custody within 24 hours of the filing of this order, on an appropriate Order of Supervision as provided in 8 C.F.R. § 241.13(h).

2. It is further **ORDERED** that if the Government takes steps to remove petitioner to any other country, it must provide him with written notice of its intent to do so and a meaningful opportunity to respond in compliance with the statute and due process, in reopened removal proceedings before an immigration judge.

3. Petitioner's request for an order prohibiting third-country removal as unconstitutionally punitive is **DENIED** without prejudice.

4. Within 48 hours after petitioner's release the Government must file with the Court a declaration confirming the date and time petitioner has been released from custody.

//

ORDER GRANTING HABEAS PETITION IN PART - 11

5.     The Court will entertain any appropriate post-judgment request for attorneys' fees.

Dated this 4th day of May, 2026.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING HABEAS PETITION IN PART - 12